IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LONNIE WHATLEY,<br>    Petitioner, | )<br>)<br>) | Civil Action No. 7:20-cv-00383 |
| v. | )<br>) | |
| | )<br>) | By: Elizabeth K. Dillon |
| J.C. STREEVAL,<br>    Respondent. | )<br>) | United States District Judge |

**MEMORANDUM OPINION**

Lonnie Whatley, a federal inmate proceeding *pro se*, filed this petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking judicial review of a disciplinary proceeding which resulted in the loss of good conduct time. Respondent has filed a motion to dismiss the petition.

For the reasons set forth herein, the court concludes that Whatley has not shown that his due process rights were violated and, therefore, will grant respondent's motion and dismiss the petition.

I. BACKGROUND

**A. Procedural History**

Whatley filed the petition on July 2, 2020. (Dkt. No. 1.) Respondent filed the motion to dismiss, with supporting memorandum, exhibit, and attachments on September 28, 2020. (Dkt. Nos. 4, 5, 5-1. After seeking and receiving an extension of time, Whatley filed his first response to the motion on December 9, 2020. (Dkt. Nos. 7, 8, 9.) On December 15, 2020, respondent filed a reply to Whatley's first response. (Dkt. No. 10.) Whatley filed a second response on February 16, 2021. (Dkt. No. 11.)

**B. Factual Background**

Whatley is currently incarcerated at the United States Penitentiary (USP) in Lee County, Virginia. The incident giving rise to the petition occurred when he was imprisoned at Federal Correctional Institution (FCI) Edgefield in South Carolina.

On February 10, 2019, Whatley was charged in Incident Report (IR) No. 3222745 with assault another person without serious injury. The incident resulted from an altercation between Whatley and another inmate in the common area of the unit. The reporting officer, Lieutenant Samuel Denny, stated that he reviewed video surveillance via CCTV for A3 unit and determined that Whatley had assaulted the other inmate by striking him with closed fist punches to the head and upper torso area and kicking him numerous times to the upper torso when he fell to the ground. After both inmates were medically assessed and photographed, they were placed in the Special Housing Unit without further incident.

As part of the subsequent investigation, Whatley was informed of his rights and acknowledged that he understood them. Whatley was advised of his right to remain silent at all stages of the disciplinary process, and he was informed that his silence could be used to draw an adverse inference against him, except that silence alone could not form the basis of a finding that he committed a prohibited act. The investigating officer, Lieutenant Broadwater, read the IR to Whatley and provided him with a copy of it. The only statement Whatley made to the investigator was "no comment." Based on the information provided by the reporting staff and Whatley's "no comment" statement, Lt. Broadwater found the charge to be valid and referred the matter to the Unit Discipline Committee (UDC).

The UDC conducted a hearing on February 13, 2019. Whatley again stated, "No comment." The UDC referred the charge to the Disciplinary Hearing Officer (DHO) for further hearing.

Prior to the DHO hearing, Whatley received a Notice of Discipline Hearing and an Inmate Rights at Discipline Hearing form, both of which Whatley signed upon receipt. The former document reflects that Whatley declined to have a staff representative represent him at the DHO hearing and did not wish to have witnesses at the hearing.

The DHO hearing was held on February 15, 2019, at FCI Edgefield. The DHO noted that Whatley had received advance written notice of the charge, been advised of his rights, and waived his right to have a staff member and witnesses present. Whatley stated that he was ready to proceed and again stated that he had no comment. The DHO found that Whatley had committed the prohibited act of assaulting another person without serious injury based on the reporting officer's written report, memorandum, photos, investigation report, and medical assessment. The DHO also noted that Whatley neither confirmed nor denied committing the prohibited act. The DHO sanctioned Whatley to loss of commissary privileges for six months, disciplinary segregation for 30 days, and loss of 27 days of good time credit.

## C. Petition

Whatley raises four claims in the instant petition. First, he alleges that FCI Edgefield staff showed favoritism toward the other inmate involved by not charging him as well and that Whatley should not have received an IR for assaulting any person. (Pet. 6, Dkt. No. 1.) Second, Whatley claims that his due process rights were violated when the DHO never reviewed the video, which he characterizes as "clear evidence" to support his defense. (*Id.* at 7.) Third, Whatley states that the DHO never signed or dated the DHO report. (*Id.*) Fourth, Whatley

asserts that his due process rights to appeal were hindered because the Mid-Atlantic Region would not take his appeal without a Bureau of Prisons (BOP) memo written by USP Lee staff. (*Id.* at 8.) As relief, Whatley seeks expungement of the assaulting any person charge from his record. (*Id.*)

## II. DISCUSSION

Prisoners may not be deprived of life, liberty, or property without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "To state a procedural due process violation, a [petitioner] must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Chestnut v. Lue*, No. 7:19-cv-00455, 2019 WL 6352656, at *3 (W.D. Va. Nov. 27, 2019) (quoting *Prieto*, 780 F.3d at 248). "It is well established that the loss of earned good time credits . . . is an interest sufficient to invoke the protections of due process." *Id.* (citing *Wolff*, 418 U.S. at 439); *see also Moses v. Bledsoe*, No. 1:03-cv-149, 2004 WL 3317657, at *2 (N.D. W. Va. Sept. 28, 2004) ("An inmate has a liberty interest in good time credit and no state may constitutionally deprive him of that good time credit without due process of law.").

The Supreme Court described the process due a prisoner accused of a disciplinary infraction in *Wolff* as follows: (1) the inmate must receive written notice of the charges; (2) he must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) there must be a written statement by the factfinder as to the evidence relied on and the reasons for the decision. *Massengale v. Streeval*, No. 7:19-cv-543, 2020 WL 4227559, at *4 (W.D. Va. July 23, 2020) (citing *Wolff*, 418 U.S. at 564); *Chestnut*, 2019 WL 6352656, at *3 (same). The Supreme Court further held that "revocation of good time does not comport with

the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (quoting *Wolff*, 418 U.S. at 558) (internal citation omitted); *see also Chestnut*, 2019 WL 6352656, at *3 (noting that there was "'some evidence' supporting the DHO's conclusions, all that is required" (quoting *Hill*, 472 U.S. at 454, 456)). "'Some evidence' is defined as 'any evidence in the record that could support the conclusion reached.'" *Moses*, 2004 WL 3317657, at *3 (quoting *Hill*, 472 U.S. at 455–56). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see also Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quoting *Hill*, 472 U.S. at 455-56). "As long as a hearing officer's decision is supported by some evidence and the requirements of *Wolff* have been met, the decision cannot be disturbed on judicial review." *Massengale*, 2020 WL 4227559, at *4.[1] However, the "some evidence" standard is separate from the question of whether the disciplinary proceedings comported with the due process requirements of *Wolff*. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("*Hill* in no way abrogated the due process requirements enunciated in *Wolff*, but simply held that in addition to those requirements, revocation of good-time credits does not comport with the minimum requirements of procedural due process, unless the findings are supported by some evidence in the record.") (internal quotation marks omitted); *see also Mack v. Mullins*, No. 7:19-cv-00536, 2020 WL 4253304, at *3 (W.D. Va. July 24, 2020) ("A

---

[1] BOP regulations state that: "The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." *Moses,* 2004 WL 3317657, at *9; *see also Smith v. Bureau of Prisons*, No. 7:03-cv-00662, 2004 WL 3397938, at *2 (W.D. Va. Oct. 22, 2004) (noting that "greater weight of the evidence" is "the standard employed in prison disciplinary hearings when conflicting evidence is presented"), *aff'd*, 128 F. App'x 342 (4th Cir. 2005); 28 C.F.R. § 541.8(f) ("The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.").

finding of sufficient evidence, however, is irrelevant to deciding whether Mack's other asserted due process claims have merit." (citing *Lennear v. Wilson*, 937 F.3d 257, 277 (4th Cir. 2019))).

The BOP's Administrative Remedy Procedure provides a three-level appeal process through which an inmate may seek formal review of issues that relate to any aspect of his confinement. 28 C.F.R. § 542.10. Ordinarily, an inmate must first attempt to informally resolve the issues with a staff member. 28 C.F.R. § 542.13(a). If informal resolution is not successful, the inmate may file a formal written complaint addressed to the Warden. *Id.* This complaint must be filed within 20 calendar days of the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, that response may be appealed to the Regional Director within 20 calendar days of the date on which the Warden signed the response. 28 C.F.R. § 542.15(a).[2] An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel within 30 calendar days of the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final administrative appeal. 28 C.F.R. § 542.15(a).[3] Respondent agrees that Whatley has fully exhausted his administrative remedies with respect to IR 3222745. (Resp't's Mem. 8, ECF No. 5.)

Whatley first claims that the staff at FCI Edgefield "showed favoritism" to the other inmate involved in the altercation by not charging him as well. (Pet. 6.) According to Whatley, the other inmate "started the fight by spitting in [his] face." (*Id.* at 7.) Whatley further states that

---

[2] Appeals of DHO decisions "shall be submitted initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2).

[3] These time limits may be extended when the inmate demonstrates a valid reason for the delay. 28 C.F.R. § 542.15(a); *see also* 28 C.F.R. § 542.14(b) (listing possible reasons for delay).

he should not have been charged with assaulting any person but, rather, both inmates should have been charged with fighting with another person. (*Id.* at 6-7.)

Whatley claims that the Edgefield staff favored the other inmate because "he snitches for them." (*Id.* at 3.) However, he has provided no evidence of favoritism other than his "unsupported, conclusory allegations," *Wheeler v. Perdue*, No. 1:14-cv-36, 2015 WL 366412, at *8 (N.D. W. Va. Jan. 27, 2015), which do not entitle him to relief, *see id.* (citing *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992)). Whatley's assumption of favoritism because he was the only one charged is just that, an assumption, not a fact. *See id.*

Importantly, Whatley does not allege that the DHO was biased. *Wolff* guarantees an impartial decisionmaker. *Chestnut*, 2019 WL 6352656, at *5 ("An inmate facing disciplinary charges has the right to an impartial decisionmaker." (citing *Wolff*, 418 U.S. at 571)); *see also* 28 C.F.R. § 541.8(b) ("The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident."). Whatley does not allege that the DHO had any involvement in the incident prior to the DHO hearing. *See, e.g.*, *Smith v. Masters*, No. 1:15-cv-11533, 2017 WL 1064032, at *3 (S.D. W. Va. Feb. 16, 2017) ("There is no evidence, and Petitioner does not allege, that the DHO was a 'victim, witness, investigator, or otherwise significantly involved in the incident[.]'" (quoting 28 C.F.R. § 541.8(b))), *adopted sub. nom. Smith v. Romero*, 2017 WL 1058988 (S.D. W. Va. Mar. 20, 2017). Further, as respondent notes, Whatley's "claim the other inmate should have also been issued an IR has no bearing on the outcome of [his] disciplinary action because each inmate's actions are considered individually," (Resp't's Mem. 9 n.2), and because "the DHO is the sole decider of the outcome of the disciplinary hearing," (*id.* at 9 n.3; *see also id.* Ex. 1, Davis Decl. ¶ 13, Dkt. No. 5-1 ("The actions or opinions of other staff members do not affect the outcome of the DHO hearing.")).

To the extent Whatley challenges the sufficiency of the evidence supporting the charge of assaulting any person, (Pet. 6-7; Pet'r's First Resp. 3, ECF No. 9), his challenge is unfounded. The DHO stated that he considered the officer's written report, memorandum, photos, investigation report, and medical assessment. (Davis Decl. Att. D, DHO Report 17, ECF No. 5-1.) The DHO also stated that he considered Whatley's statement that he had no comment. (*Id.* at 18); *see also Colon v. Ratledge*, No. 7:17-cv-00219, 2019 WL 245920, at *2 (W.D. Va. Jan. 17, 2019) (noting evidence considered by DHO and stating that "[t]he DHO also considered the fact that [the inmate] had elected not to make any statement or offer any documentary evidence in his defense at the hearing."). In the section of the DHO Report entitled "Specific Evidence relied on to Support Findings," the DHO stated

> On February 10, 2019, at approximately 7:10 p.m., the A3 Unit Officer Barsh called for assistance after he heard a commotion in the common area of his unit. Officer Barsh witnessed inmate [redacted] laying on the ground with injuries consistent with being in a physical altercation. Responding staff restrained and removed inmate [redacted] from the unit. At approximately 1920 hrs. I Lieutenant Denny reviewed video surveillance via CCTV for A3 unit. I determined that, inmate Whatley, Lonnie, Reg. No. 59541-019 assaulted inmate [redacted] [b]y striking him with closed fist punches to the head and upper torso area and kicking him numerous times to the upper torso when he fell to the ground. Both inmates were medically assessed, photographed, and placed in the Special Housing Unit without further incident.
>
> You appeared before the DHO and stated you have no comment.
>
> The DHO considered your statement that stated you have no comment. Although, you exercised your right to remain silen[t] and did not confirm nor deny that you committed the prohibited act Assaulting w/o serious injury. There is never a good reason for an inmate to even consider the possibility of assaulting another person or a staff member with a weapon in their possession. The DHO found base[d] on greater weight of the evidence in the officer[']s written account of the incident, that you committed the prohibited act assaulting w/o serious injury. Accordingly, the DHO found that you committed the prohibited acts as stated above.

(DHO Report 17-18 (quoting Resp't's Mem. Ex. 1, Davis Decl. Att. A, IR 8, ECF No. 5-1 (redactions in original)). Based on the foregoing, sufficient evidence supported the DHO's finding that Whatley was guilty of the charged offense.

Next, Whatley argues that his due process rights were violated because the DHO never reviewed the video of the incident. (Pet. 7.) According to Whatley, the video "clearly" showed that the other inmate started the fight by spitting at Whatley. (*Id.* at 8.)

In *Lennear*, the Fourth Circuit held that an inmate at risk of being deprived of good time credits he has earned against his prison sentence has "a qualified right to obtain *and* compel consideration of video surveillance evidence," 937 F.3d at 274, "particularly evidence that is potentially exculpatory or otherwise likely to assist an inmate in mounting a defense," *id.* at 270, provided it would not be "unduly hazardous to institutional safety or correctional goals," *id.* at 273 (quoting *Wolff*, 418 U.S. at 566). After an innate timely requests existing video footage or other documentary evidence:

> (1) The government bears the burden of establishing a legitimate penological justification for refusing to consider such evidence; (2) whether an asserted penological justification warrants denying consideration of such evidence must be assessed on a case-by-case basis; (3) to the extent consideration of such evidence is denied on grounds that the evidence is not pertinent, that determination must be made by the hearing officer, not prison officials involved in lodging the charge; and (4) before categorically refusing to consider such evidence, the government should assess whether any alternative avenues exist for permitting consideration of the evidence, in some form, that protect the asserted legitimate penological consideration for restricting consideration of such evidence.

*Id.* at 273; *see also Morales Mancia v. Elam*, No. 7:19-cv-00625, 2021 WL 4164686, at *5 (W.D. Va. Sept. 13, 2021) (quoting *Lennear*, 937 F.3d at 273).

9

The key to triggering access to, and consideration of, video surveillance evidence is the inmate's request. *Lennear*, 937 F.3d at 272 ("[U]pon an inmate's request, the disciplinary hearing officer must review video surveillance unless the government establishes that *consideration* of such evidence would be, under the particular circumstances of the case, unduly hazardous to institutional safety or correctional goals." (internal quotation marks omitted)). In *Lennear*, there was a question as to whether the petitioner had timely requested that prison officials review surveillance video of the incident, *id.* at 266-67, leading the circuit court to remand the case to the district court for further factfinding on that issue (among others), *id.* at 279.

Here, there is no contemporaneous evidence that Whatley ever requested review of the video surveillance of the altercation which led to IR 3222745, despite Whatley's assertion to the contrary, (Pet'r's First Resp. 3 (stating that he "asked for the video at all stages of the process . . .")). The "Investigation" section of the IR states that, after being read and receiving a copy of the IR, Whatley "never claimed the report to be true or not true as written and elected to provide the following statement, No Comment." (IR 10.) Whatley made no comment to the UDC, and there is no indication that he requested review of the video. (*Id.* at 9.) The Notice of Discipline Hearing reflects that Whatley waived his right to a staff representative and witnesses. (Notice of Discipline Hearing 12.) The DHO report reflects that:

> You stated you were ready to proceed. You did not request a staff representative or a witness to assist you in preparing for this hearing. You stated you understood your rights before the DHO. You stated you received your copy of the incident report. You have been afforded due process and have had ample time to prepare a defense prior to the discipline hearing.

(DHO Report 17.) Whatley again stated that he had no comment at the DHO hearing. (*Id.* at 16.) At no point does the DHO Report indicate that Whatley interrupted the proceedings to request review of the video. (*Id.* at 16-18.)

In addition to the lack of contemporaneous evidence, the DHO stated in his Declaration that Whatley "did not present any evidence or request that any evidence, including video, be reviewed." (Davis Decl. ¶ 22.) Other than his unsupported allegation to the contrary, Whatley has provided no evidence that he ever asked for review of the surveillance video. *See Wheeler*, 2015 WL 366412, at *8 ("A habeas petitioner must come forth with evidence that a claim has merit." (citing *Nickerson*, 971 F.2d at 136)). Because Whatley did not request that the DHO review the security video, the DHO was not required to review the video. *See Lennear*, 937 F.3d at 272. Therefore, Whatley has not established a due process violation.

Whatley also claims that the DHO "never signed or dated the report," (Pet. 7), referring to the DHO report. He states that "this is clearly a[n] incomplete report," (*id.*), and that the Mid-Atlantic Region stated that he would receive a signed and dated report "in the near future," (*id.*). As of the date of the filing of the petition, Whatley had not received the signed and dated report. (*Id.*)

DHO Davis explained the situation as follows:

> In this case, I recall Petitioner was transferred to another BOP institution before the DHO report was completed and served on him. Because he was no longer housed at FCI Edgefield, I electronically signed the report by typing my name in the signature box. I then forwarded the completed report to Petitioner's Unit Team staff, who records indicate served Petitioner the completed DHO report on July 31, 2019. Review of the DHO report reveals the Report was not dated. However, this technical error in the report did not affect the validity or finality of the Report as issued and did not affect Petitioner's ability to pursue administrative remedies regarding the disciplinary process.

11

(Davis Decl. ¶ 28.)

The Court makes two points regarding Whatley's third claim of error. First, Whatley did eventually receive a "complete" DHO Report, as noted by DHO Davis. (*Id.*) According to a notation in Whatley's Central File, "[t]he inmate transferred from [FCI Edgefield] prior to the completion of his DHO report. Enclosed is an unsigned copy of his DHO report. Please sign and provide the inmate with a copy of the DHO report." (Resp't's Reply 5, Dkt. No. 10.) Second, the fact that the DHO Report is undated is irrelevant. *See, e.g.*, *Bauer v. Warden FCI Williamsburg*, No. 6:16-cv-304, 2017 WL 318683, at *3 (D.S.C. Jan. 23, 2017) ("This type of typographical mistake cannot support allegations of a due process violation.").[4]

Lastly, Whatley argues that his "Due Process rights to appeal w[ere] hindered because the Mid-Atlantic region wouldn't take [his] appeal without a BOP memo written by USP-Lee staff." (Pet. 8.) Petitioner states:

> [O]n the "DHO" report Edgefield staff signed and dated 2-19-19 at 9:00 AM as to when they gave me the DHO report. This wasn't true, I had to have USP-Lee staff to find [sic] the DHO report. USP-Lee staff crossed out Edgefield staff signature and they signed and dated the day on July 31, 2019. The Mid-Atlantic region admitted this was outside the established 15 day time frame when staff is suppose[d] to deliver[] the DHO report to the inmate. Clearly saying this was outside the BOP policy time frame.

(*Id.*; *see also* Pet'r's First Resp. 2.) Again, Whatley has not stated a due process violation.

First, "*Wolff* does not recognize a constitutional right to an appeal from the disciplinary factfinder's decision." *Colon*, 2019 WL 245920, at * 3 n.7; *see also Shuck v. Bledsoe*, No. 7:05-cv-00214, 2005 WL 1677900, at *2 (W.D. Va. 2005) ("[I]nmates do not have a federal right to participate in grievance procedures." (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)).

---

[4] In *Bauer*, the DHO Report listed the wrong location where the offense allegedly occurred. *See* 2017 WL 318683, at *3. The court found that "Petitioner has not shown that this typographical error created any prejudice against him during the course of his disciplinary proceedings." *Id.*

Therefore, Whatley cannot be prejudiced by any errors in a process to which he was not constitutionally entitled. *Colon*, 2019 WL 245920, at *3 n.7 (finding claim that delay in receipt of DHO report prevented petitioner from pursuing disciplinary appeal under BOP regulations "state[d] no viable habeas claim").

Nor has Whatley demonstrated that he has been prejudiced by the delayed receipt of the DHO Report. Delayed receipt of a DHO report, without more, is not a due process violation. *Orozco v. Breckon*, No. 7:19-cv-00040, 2020 WL 1542094, at *2 (W.D. Va. Mar. 31, 2020); *Williams v. Breckon*, No. 7:1-cv-V00387, 2020 WL 1558255, at *2 (Mar. 10, 2020). The only authority setting a putative time limit on delivery of DHO reports is the BOP Program Statement, which states that a prisoner should receive a copy of the report "<u>ordinarily</u> within 15 work days of the decision." BOP Program Statement, Inmate Discipline Program, Policy No. 5270.09, § 541.8(h) (emphasis added). "[T]he BOP's violations of its own policies do not amount to a due process violation." *Bauer*, 2017 WL 318683, at *2. "It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999). Whatley says only that he was "hindered" in his ability to appeal, (Pet. 8), not that he was denied access to the BOP's administrative remedy procedure, *see Bauer*, 2017 WL 318683, at *3 ("Petitioner has . . . failed to provide any evidence that his delayed receipt of the DHO's decision had any impact at all on his ability to appeal it."); *see also Colon*, 2019 WL 245920, at *3 n.7. As previously noted, it is undisputed that Whatley exhausted his administrative remedies. (Pet. 2-3; Resp't's Mem. 8; Davis Decl. ¶ 29.) Therefore, he cannot show prejudice from the delay.

Moreover, the delay in receiving the report and changing of dates appears to have been caused by Whatley's transfer from FCI Edgefield to USP Lee, not lying or falsification of

records, as Whatley alleges. (Pet'r's First Resp. 2, 3; *see also* Davis Decl. ¶¶ 26, 28.)[5] DHO Davis states that the DHO report was not completed by February 19, 2019. (Davis Decl. ¶ 26.) Whatley states, and the official version of the DHO Report reflects, that USP Lee staff crossed out the name and date on the DHO Report and replaced them with the name of the USP Lee official who delivered the report to Whatley and the date on which the report was actually delivered. (Pet. 8; Resp't's Reply Ex. A, DHO Report 3, ECF No. 10-1; *see also* Davis Decl. ¶¶ 16, 28.) The "memo" Whatley claims the Mid-Atlantic region wanted from USP Lee staff, (Pet. 8), likely was intended to explain these circumstances.

None of Whatley's claims states a due process violation. Accordingly, respondent's motion must be granted, and the petition must be dismissed.

### III. CONCLUSION

For the reasons stated, the court concludes that Whatley has failed to state a due process violation. Therefore, the court will grant respondent's motion to dismiss and dismiss the petition. An appropriate order will be entered.

Entered: September 27, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[5] Whatley also includes the fact that the uncorrected version of the IR stated the charge as "Possessing Drugs/Alcohol," (Pet'r's First Resp. 2), among the lies he alleges, (*id.*) However, as respondent notes, the incorrect IR contained the disciplinary code for assaulting any person without serious injury, (Resp't's Reply 2), and the IR was subsequently corrected (IR 8). The fact that the IR initially contained a minor error did not prejudice Whatley in any way. *See Bauer*, 2017 WL 318683, at *3.